IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH WHITE, | :: | PRISONER HABEAS CORPUS |
| Petitioner, | :: | 28 U.S.C. § 2254 |
| | :: | |
| v. | :: | |
| | :: | |
| VICTOR WALKER, Warden, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:13-CV-1157-TWT-LTW |

## FINAL REPORT AND RECOMMENDATION

Petitioner is confined at Baldwin State Prison in Hardwick, Georgia. Petitioner, pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254 regarding his criminal convictions in Fulton County, Georgia in 2006. (Doc. 1.) Respondent filed a response opposing the petition, (Doc. 13), and exhibits consisting of the record of the state-court proceedings, (Docs. 14, 15). For the reasons discussed below, the undersigned recommends that the petition and a certificate of appealability be denied.

## I.    Background

In June 2006, a jury in the Superior Court of Fulton County, Georgia convicted Petitioner of murder, aggravated assault, concealing a death, and tampering with

evidence.  (Doc. 1 at 2)[1]; *White v. State*, 699 S.E.2d 291, 294 (Ga. 2010).  The Georgia Supreme Court summarized the trial evidence as follows:

> Shortly after 8:00 a.m. on July 10, 2005, a police officer found the nightgown-clad body of a woman lying face-down in a pool of blood in a parking area of a city park in southwest Atlanta. The forensic pathologist who performed the autopsy on the body testified she had suffered multiple blunt force trauma to her head, with the cause of death being strangulation. The body had post-mortem abrasions on her back, buttocks, heels, and right thigh, shoulder, wrist and hand, most likely inflicted when she was dragged by the feet and by the wrists or underarms to the site where she was found. Between 8:00–8:30 that same morning, [Petitioner] telephoned the daughter of Nellie Mae Kirkland, the woman he lived with in southwest Atlanta, and reported that Ms. Kirkland was not at her home but her purse and vehicle were there. The daughter called police to report her mother was missing and went to her mother's home, one-tenth of a mile from the park in which the woman's body had been found.

> The homicide unit commander of the Atlanta Police Department testified that at about noon on July 10 he was approaching the site where the dead woman's body had been found, and [Petitioner] flagged him down to report that his girlfriend was missing. A detective who was investigating the homicide came to the home of the missing woman after being contacted by the missing woman's daughter, who feared her mother was the woman found in the park. The detective and the missing woman's son walked through the tidy home and found the victim's walking cane and purse, and the detective noticed what appeared to be blood on [Petitioner's] calf. The missing woman's son took a photograph of his mother to the county morgue where the woman found in the park was

---

[1] Citations in this Report and Recommendation to documents in the Court's record include the page numbers created by the Court's electronic docketing system and appearing at the top of each page.

2

identified as being Ms. Kirkland. Police executed a search warrant at the victim's home and discovered blood-soaked sheets, pillows, and mattress on a bed that had been made, and blood on a leg of a nightstand and on a cardboard box in the bedroom. When the searching officers lifted the mattress, they found a knife lodged in the center of the bed between the mattress and box springs. Found in the backseat of the patrol car used to transport [Petitioner] to police offices were two cardboard scraps from the box in the bedroom, which scraps contained blood determined to be that of the victim.

The victim's children testified their mother had told them she planned to have [Petitioner] leave her home because he had resumed using illegal drugs and she feared him and his bizarre behavior. The victim had made arrangements for one of her children to change the locks on the victim's home when [Petitioner] next left for work. An acquaintance of [Petitioner] testified that between 8:00–9:00 a.m. on July 10, [Petitioner], with a few scratches on his hands, visited her home where he bought and consumed alcoholic beverages.

[Petitioner] testified he had spent July 9 smoking crack cocaine and drinking wine and beer, and the victim had realized how he had spent the day when she returned home at 9:00 p.m. While the two were in a bedroom, the victim berated [Petitioner] about his behavior, mentioned her regret at having recently made a $4,000 down payment on the vehicle he used, and then slapped him, pushed him down on the bed, and jumped on him. He was able to get her off him, at which point the victim swung at him with a knife, and he pushed her, causing her to strike her face on the nightstand. According to [Petitioner], the victim stood up and went into the kitchen, leaving [Petitioner] in the bedroom. Fifteen minutes later, [Petitioner] found her on the kitchen floor and, believing her to be dead, left the house. He returned 30–40 minutes later, found her in the same place he had left her, and dragged her body from the house to the park, falling down the six front steps of the house and causing the victim's head to repeatedly hit the steps. He returned to the house,

3

cleaned up, and called the victim's daughter and asked where her mother was.

*White*, 699 S.E.2d at 294-95.

The trial court sentenced Petitioner to life in prison for murder, a consecutive term of ten years for concealing the death of another, and a consecutive term of three years for tampering with evidence. *Id.* at 294 n.1; Doc. 1 at 2. The Georgia Supreme Court affirmed Petitioner's convictions, but vacated the three-year sentence for tampering with evidence. *Id.* at 295-97.

Petitioner filed a petition for a writ of habeas corpus in the Superior Court of Hancock County, Georgia. (Doc. 1 at 3; Doc. 14-1.) The state habeas court denied Petitioner relief, and the Georgia Supreme denied him a certificate of probable cause to appeal that ruling. (*Id.* at 3; Docs. 14-6, 14-8.)

Petitioner then filed his federal habeas petition in this case, asserting the following grounds for relief:

1.  his trial counsel rendered ineffective assistance by not presenting Petitioner's testimony at the *Jackson v. Denno*[2] hearing to rebut a detective's testimony that Petitioner did not ask for a lawyer during police interrogation;

---

[2] 378 U.S. 368 (1964).

2.      his appellate counsel rendered ineffective assistance by not raising on direct appeal that the jury charges were improper and the indictment was insufficient;

3.      the trial court erred in discharging a juror over Petitioner's objection; and

4.      his trial counsel operated under an actual conflict of interest regarding his desire to plead guilty in exchange for a sentence of life imprisonment, and the Georgia Supreme Court's rejection of that claim is contrary to *Cuyler v. Sullivan*, 466 U.S. 335 (1980).

(Doc. 1 at 5-6; Doc. 1-1.) Respondent contends that Petitioner procedurally defaulted ground two by not raising it in his state habeas action and that his remaining claims lack merit. (Doc. 13-1.)

## II.   Applicable Legal Standards

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus for a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). This power, however, is limited.

### A.   Review Under 28 U.S.C. § 2254

A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established

5

Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 131 S. Ct. at 1398 (citations and quotation marks omitted).

In applying 28 U.S.C. § 2254(d), a federal habeas court first determines the "clearly established federal law" based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The federal habeas court then determines whether the state court decision is "contrary to" that clearly established federal law, i.e., whether the state court "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or "confronts a set of facts that are materially indistinguishable" from a Supreme Court decision "and nevertheless arrives at a [different] result." *Id.* at 405-06.

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it then determines whether the decision is an "unreasonable application" of that law, i.e., whether "the state court identifies the

correct governing legal principle" from the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* at 409, 411; *see Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) ("For purposes of § 2254(d)(1), an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." (quotations omitted)). In short, when a state court applies clearly established federal law to a claim, federal habeas relief is not available unless the petitioner shows that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

B.   Procedural Default

Federal habeas review is generally barred for a claim that was procedurally defaulted in state court. For example,

> if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the

7

> petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

*Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (citations omitted). Under Georgia law, a ground for relief that could have been raised in a state habeas action but was not is waived and cannot be asserted later. O.C.G.A. § 9-14-51; *Smith v. Zant*, 301 S.E.2d 32, 34 (Ga. 1983). A ground for relief defaulted in this manner under state law is barred from review by a federal court. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Bailey*, 172 F.3d at 1303.

This bar to federal habeas review may be lifted if the petitioner can demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law; or (2) a fundamental miscarriage of justice, *i.e.,* the continued incarceration of someone who is actually innocent, arising from the federal court's failure to consider the defaulted claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488-89, 495-96 (1986). To establish cause, a petitioner must show either that his counsel's assistance was so ineffective that it violated his Sixth Amendment right to counsel or "that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. To establish prejudice, "a petitioner must show that there

8

is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted). Finally, to prevail on a claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial," thereby showing "that it is more likely than not that no reasonable juror would have convicted him" had the new evidence been presented. *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

C.   Ineffective Assistance Of Counsel

The standard for evaluating ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The analysis is two-pronged, but a court need not address both prongs "if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

The petitioner must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. A court must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was

9

reasonable and adequate. . . ."). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy, *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), and "a petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden," *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). Appellate counsel in a criminal case does not have a duty to raise every nonfrivolous issue requested by his client. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

Under *Strickland*'s second prong, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. A petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When the deferential *Strickland* standard is "combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether 'there is any reasonable argument that counsel satisfied *Strickland*'s

10

deferential standard.'" *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) (citing *Harrington*, 131 S. Ct. at 788). "Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Id.* at 911.

## III.   Analysis

After reviewing the record of the proceedings in state court and the parties' filings, the undersigned concludes that an evidentiary hearing is not required for disposition of this case. *See* Rule 8(a), Rules Governing § 2254 Cases in the U.S. District Courts. Where applicable, the state courts' factual findings are discussed below and are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has not "rebutt[ed] the presumption of correctness by clear and convincing evidence." *See id.*

### A.   Ground One

The Georgia Supreme Court adjudicated the claim in ground one as follows:

[Petitioner] claims trial counsel performed deficiently when she did not have [Petitioner] testify at the *Jackson–Denno* hearing to rebut a detective's testimony that [Petitioner] did not ask for an attorney. At the hearing on the motion for new trial, [Petitioner] testified he told counsel at the pre-trial hearing that he had asked for an attorney during a break between videotaped sessions of his interview with detectives; at the motion-for-new-trial hearing, trial counsel testified she did not recall

11

> having such a conversation with her client and, had he so informed her, she would have called him to testify at the *Jackson–Denno* hearing to rebut the testimony of the detective. In light of the conflicting testimony, the trial court was authorized to conclude that trial counsel, whom the trial court had described during the hearing as "one of the best trial lawyers I have seen, . . . very effective[,] . . . a great cross-examiner, argues as well as anybody that I have seen, and . . . she works hard for her clients," was more credible than [Petitioner].

*White*, 699 S.E.2d at 301. The Georgia Supreme Court applied the controlling federal law – *Strickland* – to this claim of ineffective assistance of counsel. *Id.* at 299-301. Petitioner must therefore show that the Georgia Supreme Court unreasonably applied *Strickland* to the claim or based its ruling on an unreasonable determination of the facts in light of the evidence presented at the hearing on Petitioner's motion for new trial. *See* 28 U.S.C. § 2254(d).

A review of the transcript of the hearing on Petitioner's motion for new trial reveals that the Georgia Supreme Court accurately described the testimony presented at that hearing on the *Jackson-Denno* issue. (*See* Doc. 15-18 at 46-47, 61-64.) The trial court's factual finding that trial counsel's testimony regarding the issue was more credible than Petitioner's is presumed correct. *See* 28 U.S.C. § 2254(e)(1). Petitioner has presented no evidence rebutting that presumption of correctness, much less "clear and convincing evidence." *See id.* Nor has he shown that the Georgia Supreme

12

Court's rejection of the claim is based on an unreasonable determination of the facts adduced at the hearing on Petitioner's motion for new trial. In short, Petitioner has not overcome the double deference applicable to his claim of ineffective assistance counsel and is not entitled to relief on ground one.

B.    Ground Two

Petitioner alleges three instances in which his appellate counsel was ineffective on direct appeal. Petitioner procedurally defaulted those claims by not raising them in his state habeas action.[3] Petitioner offered no explanation for his failure to assert in that case the claims he presented in ground two of his federal petition. Indeed, Petitioner did not respond at all to the procedural default issue or any of Respondent's other arguments. The ineffective assistance of appellate counsel claims in ground two

_____

[3] Petitioner attempted to raise one of the claims – that his appellate counsel was ineffective for failing to argue on appeal that the trial court gave a confusing and misleading jury charge that commented on the evidence – in a motion to amend his state habeas petition filed after the hearing on the petition. (Doc. 14-5.) The state habeas court denied the motion to amend because Georgia law prohibited Petitioner from raising a new claim after the hearing (at which the state court had orally denied habeas relief). (Doc. 14-6 at 3.) It is undisputed that the state habeas court's refusal to consider the new claim rests upon an independent and adequate ground under Georgia law. The claim is therefore procedurally defaulted from review in federal court. *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

13

are procedurally defaulted and cannot be considered. *See Bailey*, 172 F.3d at 1302-03.

C.     Ground Three

Petitioner complains in this ground of the trial court's dismissal during trial of a juror and replacement with an alternate juror over Petitioner's objection.  The trial court dismissed the juror because she had a brief, non-trial related conversation with a member of the victim's family during a break in the trial, had arrived late that day for trial, and had failed to inform the court during voir dire that she had airline tickets for a family trip scheduled during the trial. (Doc. 15-9 at 134-36; Doc. 15-10 at 10-11, 43-50.) Petitioner contends that those reasons were insufficient to dismiss the juror and that the dismissal constituted a structural defect that rendered the entire trial fundamentally unfair. (Doc. 1-1 at 26-31.) The Georgia Supreme Court reviewed the portions of the trial transcript in which the issues with the dismissed juror were discussed and concluded that, under Georgia law, the trial court did not abuse its discretion in dismissing the juror. *White*, 699 S.E.2d at 298.

Petitioner has not specified what federal law he contends the trial court violated by dismissing the juror, but appears to contend that the dismissal violated Georgia's statute governing dismissal of jurors and, thus, violated his federal constitutional right to due process.  That argument fails because the Georgia Supreme Court found that

14

the dismissal of the juror did not violate Georgia law, and "[t]his court is bound by the determination of the [Georgia] courts that no state law violation has occurred." *See Walton v. Att'y Gen. of Ala.*, 986 F.2d 472, 474-75 (11th Cir. 1993). "Without a state law infraction, [Petitioner] cannot establish a deprivation of his due process rights." *See id.* at 475.

To the extent Petitioner argues that dismissal of the juror violated his right to a trial by jury under the Sixth Amendment to the U.S. Constitution, he has identified no clearly established law determined by the U.S. Supreme Court to which the Georgia Supreme Court's decision was contrary or that the Georgia Supreme Court unreasonably applied. *See* 28 U.S.C. § 2254(d). The only U.S. Supreme Court decisions Petitioner cites in support of ground two are decisions setting forth the parameters of the Sixth Amendment right to a jury trial, none of which involved dismissal of a juror during trial. (*See* Doc. 1-1 at 28-29); *see Powers v. Ohio*, 499 U.S. 400, 402 (1991) (holding that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same races"); *United States v. Jorn*, 400 U.S. 470, 486-87 (1971) (holding that re-prosecution of defendant "would violate the double jeopardy provision of the Fifth Amendment" after trial court prematurely

15

ended trial and discharged entire jury); *Duncan v. Louisiana*, 391 U.S. 145, 161-62 (1968) (holding that "a crime punishable by two years in prison is . . . a serious crime and . . . [c]onsequently, appellant was entitled to a jury trial"). Petitioner also cites portions of two Supreme Court cases involving coerced confessions that discuss the errors that constitute "structural defects in the constitution of the trial mechanism" and general notions of due process. *See* Doc. 1-1 at 30-31; *Arizona v. Fulminante*, 499 U.S. 279, 302, 309-10 (1991) (listing the structural defects as denial of the right to counsel, denial of the right to self-representation, denial of the right to a public trial, unlawful exclusion of members of the defendant's race from a grand jury, and denial of an impartial trial judge); *Rochin v. California*, 342 U.S. 165, 173 (1952) ("[C]onvictions cannot be brought about by methods that offend 'a sense of justice.'").

None of the U.S. Supreme Court decisions Petitioner cites clearly establish a federal right not to have a juror dismissed during trial, before deliberations, in circumstances like those present with the juror who was dismissed during Petitioner's trial. The Court has found no other Supreme Court decisions finding such a right. Petitioner relies primarily on two decisions by the U.S. Court of Appeals for the Eleventh Circuit in support of ground three. (Doc. 1-1 at 29-31); *see Peek v. Kemp*, 784 F.2d 1479 (11th Cir. 1986); *Green v. Zant*, 715 F.2d 551 (11th Cir. 1983). Those

16

decisions are not relevant to the § 2254(d) analysis because they are not Supreme Court decisions. *See Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1316 (11th Cir. 2010) ("Nor can anything in a federal court of appeals decision, even a holding directly on point, clearly establish federal law for § 2254(d)(1) purposes."); *Fults v. Upton*, No. 3:09-CV-86-TWT, 2012 WL 884766, at *16 n.11 (N.D. Ga. Mar. 14, 2012) (observing that "[n]either [*Peek* nor another Eleventh Circuit decision] . . . are clearly established Supreme Court law for purposes of 28 U.S.C. § 2254(d)").

Even if Green and Peek were relevant under § 2254(d), they do not support Petitioner's claim. The Eleventh Circuit held in *Green* "that it would be prejudicial and constitutionally deficient for a trial judge to excuse a juror during deliberations for want of any factual support, or for a legally irrelevant reason." *Peek*, 784 F.2d at 1484 (quotation marks omitted). The Eleventh Circuit recognized in *Green* and again in *Peek* "that the erroneous replacement of a juror may under certain circumstances deprive a defendant of his valued right to have his trial completed by a particular tribunal, his sixth amendment right to a fair, impartial and representative jury, and his due process rights grounded in the entitlement to procedures mandated by state law." *Id.* at 1483.

17

Both *Green* and *Peek* involved a juror who was dismissed after deliberations began and whom the trial court did not question before dismissal. *Id.* at 1481-82; *Green*, 715 F.2d at 554-55. The juror in Petitioner's trial was dismissed mid-trial, before deliberations, and was questioned by the trial court and Petitioner's counsel before dismissal. (Doc. 15-9 at 134-36; Doc. 15-10 at 10-11, 43-50.) Even assuming *Peek* or *Green* could determine the "clearly established Federal law" for purposes of reviewing the Georgia Supreme Court's adjudication of Petitioner's claim in ground three (they cannot), neither case suggests that the dismissal of the juror during Petitioner's trial violated Petitioner's federal constitutional rights. *See* 28 U.S.C. § 2254(d)(1); *Lowery v. Cummings*, No. 3:05CV303/LAC/MD, 2006 WL 2361929, at *19-21 (N.D. Fla. July 17, 2006) (finding no structural defect under *Peek* or *Green* where trial court erroneously dismissed two sitting jurors, rather than alternate jurors, just before deliberations began). Petitioner is not entitled to relief on ground three.

D.   Ground Four

Before trial, Petitioner wanted to plead guilty to murder with a sentence of life imprisonment. *White*, 699 S.E.2d at 721. Petitioner's court-appointed counsel, a Fulton County public defender, told him she could not continue to represent him if he pled guilty because her office's policy is not to represent defendants who plead guilty

18

to a crime carrying a sentence of life imprisonment. *Id.* Petitioner responded, according to his counsel, that he wished her to continue as his counsel and went to trial. *Id.* Petitioner contended after trial that his counsel had a conflict of interest given her office's policy regarding agreement by plea to life imprisonment. *Id.*

At the hearing on Petitioner's motion for new trial, the trial judge offered to reduce Petitioner's sentence to life imprisonment, i.e., to remove the additional thirteen years to which Petitioner was sentenced for the crimes other than murder. *Id.* Petitioner, upon the trial judge directly asking him if he wanted to accept that offer and after conferring with his new post-trial counsel, declined the offer. *Id.*; Doc. 15-18 at 44-46, 79 ("respectfully declining the court's offer [to] cut 13 years off").

A criminal defendant's Sixth Amendment right to counsel is violated when his lawyer has an actual conflict of interest that adversely affects the lawyer's performance. *Mickens v. Taylor*, 535 U.S. 162, 173-74 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). If a defendant demonstrates both an actual conflict and a resulting adverse affect on the representation, he need not show that there is a reasonable probability that his case would have turned out differently absent his counsel's ineffectiveness, i.e., he need not show prejudice. *Mickens*, 535 U.S. at 166, 173 (the standard "requires proof of effect upon representation but (once such effect

19

is shown) presumes prejudice"); *Cuyler*, 446 U.S. at 349-50 ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."). The U.S. Supreme Court has never held that an unconstitutional conflict of interest can arise in situations other than concurrent representation, i.e., where defense counsel simultaneously represents two or more clients with adverse interests. *Mickens*, 535 U.S. at 176 (noting that whether *Cuyler* applies to conflicts not involving multiple concurrent representation is "as far as the jurisprudence of this Court is concerned, an open question"); *see Earp v. Ornoski*, 431 F.3d 1158, 1184 (9th Cir. 2005) ("The *Mickens* Court specifically and explicitly concluded that [*Cuyler*] was limited to joint representation . . . .").

In reviewing Petitioner's claim in ground four, the Georgia Supreme Court recognized that the U.S. Supreme Court has not found an actual conflict of interest in violation of the Sixth Amendment outside the context of a lawyer representing multiple defendants concurrently. *White*, 699 S.E.2d at 300. The Georgia Supreme Court noted, however, that it had previously found "a Sixth Amendment actual conflict to occur when the attorney's duty of loyalty to his client conflicts with the attorney's duty to the attorney's employer" despite no concurrent representation. *Id.* (citing *Edwards v. Lewis*, 658 S.E.2d 116 (Ga. 2008)). Because Petitioner's trial

20

counsel's duty of loyalty to her employer conflicted with her duty of loyalty to Petitioner regarding the guilty plea, the Georgia Supreme Court found that Petitioner "demonstrated an actual conflict of interest under *Edwards v. Lewis*." *Id.* The court further found, however, that the "circumstances of the actual conflict . . . are not of the magnitude that render the likelihood of an unreliable verdict so high that we abandon the case-by-case inquiry of the *Strickland* [*v. Washington*] prejudice prong." *Id.* at 301. The court concluded that "[s]ince [Petitioner] has not established an actual conflict of interest that would entitle him to a new trial and declined the remedy available to him [the trial court's offer to vacate the thirteen years added to the life sentence], the trial court did not err in holding that [Petitioner] did not establish he received ineffective assistance of counsel." *Id.*

The Georgia Supreme Court's rejection of Petitioner's conflict claim was not contrary to clearly established federal law determined by the U.S. Supreme Court. As discussed above, the U.S. Supreme Court has never found a violation of the Sixth Amendment where a conflict of interest arose in a situation not involving a lawyer's concurrent representation of multiple defendants. *See Mickens*, 535 U.S. at 176 (noting that whether *Cuyler* applies to conflicts not involving multiple concurrent representation is "as far as the jurisprudence of this Court is concerned, an open

21

question"). Petitioner has identified no U.S. Supreme Court decision, and the Court has found none, addressing an alleged conflict arising from the policy of a defendant's lawyer's employer, as in Petitioner's case. *See Schwab v. Crosby*, 451 F.3d 1308, 1327 (11th Cir. 2006) ("[T]here is no Supreme Court decision holding that any kind of presumed prejudice rule applies outside the multiple representation context."). The Eleventh Circuit has refused to apply *Cuyler*'s conflict-of-interest standard outside the context of multiple concurrent representation. *See id.* at 1322-28 (alleged conflict arose from defense counsel's personal relationships with trial witnesses); *Cruz v. United States*, 188 F. App'x 908, 910, 913-14 (11th Cir. 2006) (alleged conflict arose from defense counsel's interest in avoiding disclosure of personal information).

Nor was the Georgia Supreme Court's rejection of Petitioner's conflict claim an unreasonable application of *Cuyler* or any other U.S. Supreme Court precedent. Again, the U.S. Supreme Court itself stated that it has not extended Cuyler beyond the context of multiple concurrent representation. *Mickens*, 535 U.S. at 175-76 ("[T]he language of [*Cuyler*] itself does not clearly establish, or indeed even support, such expansive application."). In other words, the U.S. Supreme Court has not clearly established that a conflict like the one at issue in this case – where a defense lawyer's duty to her employer conflicts with her duty to represent her client in connection with

22

a desired guilty plea – violates the Sixth Amendment. "The Supreme Court 'has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.'" *Bowles*, 608 F.3d at 1315 (quoting *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009)). "And federal law is "clearly established" only when it is "embodied in a holding" of the Supreme Court." *Id.* (quoting *Thaler v. Haynes*, 130 S. Ct. 1171, 1173 (2010)).

As the Eleventh Circuit put it in *Schwab*,

[T]he command of § 2254(d) indicates that we are only able to consider the holdings of Supreme Court cases decided at the time of the state court conviction. At the time [petitioner's] conviction became final there was—and even since then there has been—no Supreme Court decision holding that prejudice should be presumed to any extent where the attorney's asserted conflict of interest does not arise from concurrent multiple legal representation. That's the whole thing under § 2254(d)(1).

For these reasons, a decision that [*Cuyler*'s] limited presumption of prejudice does not apply in this context is not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. Nor is a failure to extend the [*Cuyler*] rule to this new context unreasonable either.

*Schwab*, 451 F.3d at 1328 (citations and quotation marks omitted); *see Hand v. Sec'y, Dep't of Corr.*, 305 F. App'x 547, 550 (11th Cir. 2008) (holding that state court's decision that defendant was not prejudiced by his counsel's conflict of interest was

23

entitled to deference "[b]ecause the alleged conflict in this case does not involve the representation of multiple defendants"); *Smith v. Hofbauer*, 312 F.3d 908, 815-17 (6th Cir. 2002) (concluding that because the question of whether *Cuyler*'s rule applies outside the context of concurrent multiple representation remains an open question in Supreme Court jurisprudence, a claim based on extension of the rule outside those circumstances "is not based upon clearly established Supreme Court precedent as mandated by AEDPA"). Petitioner is not entitled to relief on ground four.

## IV.   Certificate of Appealability

A habeas petitioner may not appeal the dismissal of his § 2254 petition "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

24

adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (quotation marks omitted). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Jimenez v. Quarterman*, 129 S. Ct. 681, 684 n.3 (2009) (quotation marks omitted).

As shown in Part III, above, the resolution of Petitioner's claims is not reasonably debatable. Petitioner has not shown otherwise and has not made a substantial showing of the denial of a constitutional right. A COA is not warranted.

## V.     Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the petition for a writ of habeas corpus [1] be **DENIED**, a certificate of appealability be **DENIED**, and this action be **DISMISSED**.

**SO RECOMMENDED** this 12 day of August , 2013.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

25